UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| BILLY DERON MERRITT, | ) | |
|---|---|---|
| Movant, | ) ) ) | |
| v. | ) ) | Case No. CV409-183 CR408-205 |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

The Court **VACATES** its prior Report and Recommendation (R&R), CV408-205, doc. 67, and substitutes this in its place. After pleading guilty to violating 18 U.S.C. § 922(g) (possession of firearms by a convicted felon), doc. 30, and having lost his appeal due to its untimeliness, *see* docs. 50 & 57, Billy Deron Merritt moves to vacate his sentence. Doc. 55. The government opposes. Doc. 63. Merritt's motion should be denied.

## I. BACKGROUND

Merritt's sentence followed a Presentence Investigation Report (PSI) that noted, *inter alia,* two prior felony crimes of violence in figuring

a United States Sentencing Guidelines (U.S.S.G.) base offense level of 24, reduced to 21 for accepting responsibility. PSI at 5. Those two felonies triggered application of U.S.S.G. § 2K2.1(2) (2008), the felon-in-possession guideline encompassing "at least two felony convictions of . . . a crime of violence." *Id.*[1] According to the Guidelines, a "crime of violence":

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). With a criminal history category of VI, this established a 77-96 month guideline range. PSI at 17. The sentencing judge accepted the PSI's "conclusions as to the applicable advisory guidelines," doc. 54 at 4, yet departed downward to "a category [IV]

---

[1] "Section 2K2.1 of the Guidelines governs [Merritt's] base offense level for violating 18 U.S.C. § 922(g)(1). Subsection (a)(2) of § 2K2.1 provides that a defendant's base offense level is 24 'if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of ... a crime of violence.' According to the Commentary to § 2K2.1, the term '[c]rime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." *United States v. McGill*, 450 F.3d 1276, 1278 (11th Cir. 2006). The provisions cited by *McGill* remained unchanged in 2008, when Merritt was sentenced. *See* U.S.S.G. Manual at 247 (2008).

2

criminal history. . . . with a total offense level of 21," thus establishing a 57-71 month range, and imposed a 66-month term. *Id*. at 10; doc. 33 at 2.

## II. ANALYSIS

Although Merritt's brief cites to and focuses on the Armed Career Criminal Act (ACCA) and 18 U.S.C. § 924(e)(2)(B)(ii) cases,[2] he correctly insists that he was wrongly sentenced under the career-offender *sentencing guideline* -- U.S.S.G. § 4B1.2(a)(2).[3] Doc. 55 at 4, 5; doc. 56 at 6; doc. 70. Again, § 4B1.2(a) defines the "crime of violence" element of U.S.S.G. § 2K2.1(a)(2). Merritt says his lawyer was ineffective for failing to object and thus knock out as legally unsupported the two prior crimes of violence driving the offense level determination under § 4B1.2(a). Doc.

---

[2] The "U.S.S.G. § 2K2.1(a)(2)/§ 4B1.2(a) inquiry" here is the same as whether an offense is a "violent felony" under the Armed Career Criminal Act's (ACCA's) residual clause, *United States v. Archer*, 531 F.3d 1347, 1350 n. 1 (11th Cir. 2008), since courts apply both ACCA and § 4B1.2(a)(2) case law interchangeably. *Id.*; *see also United States v. McGill*, 618 F.3d 1273, 1276 n. 5 (11th Cir. 2010); *United States v. Oner*, 382 F. App'x 893, 895 (11th Cir. 2010).

[3] The core of Merritt's brief bespoke ACCA provisions and case law. Doc. 56 at 4-9. The prior R&R erroneously stated: "Merritt insists that he was wrongly sentenced under the Armed Career Criminal Act (ACCA)." Doc. 67 at 1. He has since objected that in fact he was not sentenced under ACCA but instead under U.S.S.G. § 2K2.1(a)(2) and thus § 4B1.2(a)(2). Doc. 70 at 3. The Court agrees and has thus vacated its prior R&R.

56 at 10-11.[4] Had those crimes -- (1) aggravated assault on a peace officer and (2) terroristic threats -- not been considered, the PSI would have started at a base offense level of only 20, thus resulting in a net offense level of 17 and a 37-46 month sentencing range under criminal history category IV. Doc. 64 at 3. Merritt contends, then, that this Court should find his lawyer prejudicially ineffective[5] and thus resentence him under the lower sentencing guideline range. Doc. 56 at 10-11; doc. 64 at 5. Finally, he insists, as a direct claim, that he is "actually innocent" of the § 2K2.1(a)(2) enhancement. Doc. 56 at 9; *see*

---

[4] Actually, he cites several other prior crimes (doc. 56 at 7-8) but the government, in standing on the only two discussed herein, doc. 63, effectively concedes that they do not qualify as crimes of violence.

[5] In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether counsel's assistance was ineffective. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The prejudice prong requires movants to establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

*also Harris v United States*, ___ F. Supp. 2d ___, 2010 WL 5298902 at * 4-5 (S.D. Fla. Dec. 17, 2010) (allowing and granting similarly sought relief under that exception).

The government responds that, even assuming counsel performed deficiently, Merritt cannot demonstrate prejudice because Merritt "indisputably had two qualifying 'crime of violence' convictions" ("Terroristic Threats" and "aggravated assault"), so his claim fails in any event. Doc. 63 at 4, 6-9. It agrees that courts should "consider the offense as defined by the law, rather than considering the facts of the specific violation." *Archer*, 531 F.3d at 1350; doc. 63 at 5. But it also agrees that "if the crime encompasses both conduct that would constitute a 'crime of violence' and conduct that would not constitute a 'crime of violence,' then a Court is justified in going beyond the statute itself to the actual facts of the offender's conduct." Doc. 63 at 5 (quoting *United States v. Greer*, 440 F.3d 1267 (11th Cir. 2006)). Merritt replies that his aggravated assault conviction would have been knocked out had his counsel objected under the reasoning found in *United States v. Villegas-Hernandez*, 468 F.3d 874, 879 (5th Cir. 2006), and *United States v.*

5

*Johnson*, 286 F. App'x 155 (5th Cir. 2008). Doc. 64 at 3-4. And, he argues, the Terrorist Threat conviction's documentation in the record shows that it "is not a violent felony." *Id.* at 2.

Here the PSI cited U.S.S.G. § 2K2.1(a)(2) but did not specifically identify on which part of its definitional counterpart, § 4B1.2(a)(1) or (2), it relied. PSI at 5. Nor did the judgment, Sentencing Recommendation, or Sentencing Statement kept in Merritt's probation file. Doc. 30. However, where the crime of violence fits into § 4B1.2(a)(1)'s "element's clause" (i.e., "has as an element the use, attempted use, or threatened use of physical force against the person of another") the enhanced sentence is upheld with no further inquiry,[6] and Merritt's aggravated

---

[6] Courts reference § 4B1.2(a)(1) as the "elements" clause, while the "enumeration clause" is the wording just before the "otherwise" portion of § 4B1.2(a)(2), i.e., "burglary of a dwelling, arson, or extortion, [or] involves use of explosives." *United States v. Alexander*, 609 F.3d 1250, 1254 n. 1 (11th Cir. 2010); *see also McGill*, 450 F.3d at 1279 (the wording after § 4B1.2(a)(2)'s "otherwise" is the "residual" or "otherwise" clause).

If the prior crime of violence "undeniably" or "invariably" fits within § 4B1.2(a)(1) (the "elements clause"), the sentence enhancement (for being a career offender) can be sustained on those grounds alone. *United States v. Joseph*, 371 F. App'x 70, 73-74 (11th Cir. 2010); *Roundtree v. United States*, 2009 WL 5214988 at * 4 (M.D. Fla. Dec. 29, 2009) (resisting arrest with violence "on its face, unambiguously includes violence," so "no further inquiry" was necessary before relying on the crime as a predicate offense for ACCA enhanced sentencing); *cf. United States v. Sonnenberg*, ___ F.3d ___, 2010 WL 4962821 at * 2 (7th Cir. Dec. 8, 2010) ("The first clause of the [underlying prior state] crime of violence definition does not apply here because th[at

6

assault conviction so fits.

Merritt was convicted of an "aggravated assault upon a police officer." PSI at 10 ¶ 35. O.C.G.A. § 16-5-21(a)(2) & (c) expressly encompasses purposeful, violent action, and not inaction or strict liability, because it covers assault "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. . . ." *Id.* This "unambiguously establish[es] that [Merritt] previously committed a crime of violence. . . ." *Joseph*, 371 F. App'x at 73. Thus, it falls within § 4B1.2(a)(1) because it has the elements of using or threatening to use physical force against the person of another and is not also applied to non-violent crimes. *Harris v. United States*, 2010 WL

---

state's] statute on its face does not require as an element "the use, attempted use, or threatened use of physical force against the person of another.").

If not, then courts examine the prior crime of violence under the § 4B1.2(a)(2)'s "otherwise" or "residual" clause. The ACCA residual clause counterpart to U.S.S.G. § 4B1.2(a)(2), § 924(e)(2)(B(ii), has been heavily litigated. *Begay v. United States*, 553 U.S. 137, 146 (2008), sought to resolve matters when it explained that § 924(e)(2)(B)(ii)'s "listed examples -- burglary, arson, extortion, or crimes involving the use of explosives -- illustrate the kinds of crimes that fall within the statute's scope," so its "otherwise clause" covers *only* "crimes that are roughly similar, in kind as well as in degree of risk posed, to th[os]e examples themselves." *Id.* at 141-43. Yet, litigation continues. *United States v. Sykes*, 598 F.3d 334, 336 (7th Cir.) (conviction for fleeing law enforcement in a vehicle qualified as an "ACCA" violent felony conviction), *cert. granted*, 131 S.Ct. 63 (2010), *orally argued* Jan. 12, 2011.

7

5287500 at * 3-4 (S.D. Fla. Aug. 19, 2010) (resisting arrest with violence fit under ACCA's "elements clause"); *cf. United States v. Loaeza-Montes*, 378 F. App'x 967, 970 (11th Cir. 2010) ("Because aggravated assault is included in the list of offenses detailed in § 2L1.2(b)(1)(A)(ii) cmt. n. 1(B)(iii), appellant's conviction for aggravated assault under Arizona law *per se* qualifies as a "crime of violence" under § 2L1.2(b)(1)(A)(ii)."); *United States v. Wilson*, 392 F.3d 1243, 1246 (11th Cir. 2004) (prior Florida conviction for aggravated child abuse, which included a physical-force element, qualified as a "crime of violence" within the meaning of sentencing guideline applicable to previously deported defendants. U.S.S.G. § 2L1.2(b)(1)(A)(ii)).[7]

---

[7] Note, for that matter, the unobjected-to PSI facts on Merritt's 1998 assault conviction:

> On October 9, 1998, Willacoochee, Georgia, Police Officer Nancy Corbitt attempted a traffic stop of a vehicle driven by the defendant after he was observed speeding and weaving over the roadway. The defendant failed to stop and fled from the officer; however, he was ultimately apprehended after he wrecked his vehicle, overturning the vehicle in a ditch. During the chase, the defendant brandished a shotgun and pointed the shotgun out the window in the direction of Officer Corbitt.

PSI at 10; doc. 67 at 9-10. At sentencing, Merritt and his counsel were both asked if they had any objections to the PSI's factual recitation and both said no. Doc. 54 at 4. Any objection to the sources used for these facts is waived. *United States v. Jones*, 2011 WL 49845 at * 2 (11th Cir. Jan. 7, 2011); *United States v. Kicklighter*, 346 F. App'x 516, 519 (11th Cir. 2009); *United States v Beckles*, 565 F.3d 832, 842-43 (11th

Too, *United States v. Villegas-Hernandez*, 468 F.3d 874 (5th Cir. 2006), on which Merritt relies, doc. 64 at 3-4, is distinguishable because there a *Texas* statute defining an assault offense did not have actual, attempted, or threatened use of force against the person of another as an element. *See United States v. Ortiz-Gomez*, 562 F.3d 683, 687 (5th Cir. 2009). Georgia's statute does. Merritt's other case, *United States v. Johnson*, 286 F. App'x 155 (5th Cir. 2008), doc. 64 at 3, is similarly distinguishable. Hence, this claim fails.

The "Terrorist Threat" conviction requires a more penetrating inquiry. The underlying crime of violence does not fit within the elements clause, so the Court analyzes it under § 4B1.2(a)(2)'s residual clause (i.e., "otherwise involves conduct that presents a serious potential risk of physical injury to another ") -- something the parties implicitly agree on. *See* doc. 56 at 6 (noting "three-step inquiry for determining whether a crime falls under ACCA's residual clause"); doc. 63 at 6-8.

In applying § 4B1.2(a)(2)'s residual clause, courts have two options. The first of which, cited by Merritt, doc. 56 at 6, applies where a state criminal statute encompasses only violent conduct. This "categorical

---

Cir. 2009); *cf. Harris,* 2010 WL 5298902 at * 6 (government held to similar waiver).

9

approach" involves a three-step inquiry: (1) identify how the prior crime is ordinarily committed; (2) consider whether it poses a "serious potential risk of physical injury" similar in degree to the risks posed by the residual clause's enumerated clause crimes; and (3) consider whether it is similar in kind to the enumerated crimes. *Alexander*, 609 F.3d at 1253-55. In so doing, courts basically "ask whether the conduct inherent in the commission of the [prior] crime is purposeful, violent and aggressive, *Begay*, 553 U.S. at 146, or, whether it is a more passive crime of inaction, such as the failure to report to a penal institution or driving under the influence of alcohol. . . ." *United States v. Mitchell*, 2011 WL 31788 at * 4 (11th Cir. Jan. 6, 2011) (quotes and cite omitted); *see also McGill*, 618 F.3d at 1279. Under the "categorical approach," this Court

> looks "only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990); *United States v. Llanos-Agostadero*, 486 F.3d 1194, 1196-97 (11th Cir.2007). The Court considers whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of a particular offender. *James v. United States*, 550 U.S. 192, 202, 127 S. Ct. 1586, 167 L.Ed.2d 532 (2007). [And, t]he Court focuses on the elements of the state crime to determine the way in which it is ordinarily committed. *United States v. Harrison*, 558 F.3d 1280, 1285 (11th Cir. 2009).

*United States v. Smith,* 725 F. Supp. 2d 1336, 1338 (M.D. Fla. 2010).

Sometimes the categorical approach is unworkable, especially where a state statute underlying the prior crime of violence extends to both violent and non-violent conduct. In such cases the approach must be modified:

> Where this categorical approach establishes that a statute encompasses both conduct that constitutes a violent felony and conduct that does not, a "modified categorical approach" is followed. *Shepard v. United States,* 544 U.S. 13, 23, 125 S. Ct. 1254, 161 L.Ed.2d 205 (2005); *United States v. Palomino Garcia,* 606 F.3d 1317, 1327 (11th Cir. 2010). In such a situation, a court is allowed to go *beyond the mere fact of conviction,* but is limited to examining only "records of the convicting court approaching the certainty of the record of conviction." *Shepard,* 544 U.S. at 23, 125 S.Ct. 1254.

*Id.* (emphasis added).

Finally, "if the judgment of conviction does not specify exactly which provision was violated, a court considering a recidivist enhancement may consider certain additional materials, such as charging and plea documents, but only for the limited purpose of determining under which part of a divisible statute the defendant was charged." *Sonnengberg,* 2010 WL 4962821 at * 5 (quotes and cite omitted). And if such documents are unavailable, it should be assumed

11

that the defendant] committed the non-violent offense. *Joseph*, 371 F. App'x at 73.

On Merritt's "Terroristic Threat" claim the Court previously ignored (and still does here) his "go to his bedroom" assertion because it was evidentially unsupported. Doc. 67 at 6; *see also* doc. 70 at 3 (objection again claiming that the child's injuries came from another cause, yet *still* citing no record evidence). It then noted that Georgia's terroristic threat statute, O.C.G.A. § 16-11-37, "prohibits both violent and non-violent behavior, so proof that a defendant was convicted for violating that statute does not, without more, prove that he has been convicted of a violent felony for ACCA purposes." *Greer*, 440 F.3d at 1273. Hence, actual conduct must be considered. *Id.*; *see also Joseph*, 371 F. App'x at 73.

But in searching for that conduct in Merritt's state court, terroristic threat case, the Court encountered only a hand-written accusation that charged him with threatening crimes of violence against a child, "to wit: overly punish a small child . . . all of said threats and acts toward said child and acts did terrorize said child and were in violation of

OCGA § 16-11-37." Doc. 63-1 at 6; doc. 63 at 7. The accusation provided no other detail, and thus suffered from eye-of-the-beholder problems (does the threat of a good spanking qualify?). Thus, "a district court may look outside of the 'offense of conviction' to the conduct surrounding that conviction if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself." *United States v Beckles*, 565 F.3d 832, 842-43 (11th Cir. 2009) (quotes and cite omitted). The Court therefore consulted the PSI,[8] which relates that

> [o]n July 4, 1994, law enforcement authorities received a complaint alleging that the defendant *physically assaulted* his 6-year-old stepson. The child was examined at the Coffee County (Georgia) Regional Hospital and found to have several bumps and small bruises on his head. The original charge of cruelty to a child was dismissed following the defendant's plea of guilty to the [Terroristic Threats] offense.

---

[8] *See United States v. Spell*, 44 F.3d 936, 939 (11th Cir. 1995) (district court may only inquire into conduct surrounding previous conviction, when determining if career offender sentence enhancement applies to instant offense, if ambiguities in previous judgment make crime of violence determination impossible from face of judgment itself; inquiry is limited to examining easily produced and evaluated court documents, including judgment of conviction, charging papers, plea agreement, *presentence report* adopted by the court, and findings of a sentencing judge), *cited in Beckles*, 565 F.3d at 842-43; *see also United States v. Kicklighter*, 346 F. App'x 516, 518-19 (11th Cir. 2009) (in deciding whether defendant had at least two prior convictions for crimes of violence, so as to permit sentencing as career offender, district court could rely on statements in *PSI report*, to which defendant failed to make a specific and clear objection, that the structures involved in defendant's prior burglary convictions were both dwellings, and did not plainly err in finding that these prior convictions made defendant eligible for "career offender" enhancement).

PSI at 8 (emphasis added). At sentencing, Merritt raised no objection to the PSI's factual assertions. Doc. 54 at 4. Based on the PSI, then, the Court concluded that Merritt's, O.C.G.A. § 16-11-37 Terrorist Threats conviction is a "violent felony" within the meaning of U.S.S.G. § 4B1.2(a), doc. 67 at 8, and the Court clarifies here that it falls within 4B1.2(a)(2)'s residual clause.

It follows, the Court then concluded, that Merritt cannot show *Strickland* prejudice, which means his counsel cannot be found ineffective. Nor, obviously, was he "actually innocent" of the ACCA enhancement. And that, in turn, meant his claim for resentencing within the lower guideline range was procedurally defaulted. Even if not, it would be denied on the merits. Hence, the Court advised, and again advises, that his § 2255 motion be denied.[9] Doc. 67 at 10.

---

[9] Though now moot because it has been vacated, Merritt objected to the prior R&R because he was not allowed, after sentencing, to possess the PSI. Doc. 70 at 1. He does not deny that he reviewed it with counsel prior to sentencing, however, and the Court is informed by its Probation Department that all such defendants may access it through their prison's case manager. So even if the Court granted his request to "clarify" his claim as contending that his counsel was ineffective for failing to object to ¶¶ 32 & 35 of the PSI, doc. 70 at 1-2, he could still show no prejudice because his claims fail on the merits in any event. And his claim that the Court violated *Shepard v. United States*, 544 U.S. 13 (2005), by relying on legally inadequate documentation of his prior "violence" crimes, doc. 70 at 3-4, is also meritless because he waived this

## III. CONCLUSION

Accordingly, Billy Deron Merritt's 28 U.S.C. § 2255 motion should be **DENIED**. Relatedly, his "Motion for Status Report or Hearing" (doc. 66) is **DENIED**. Applying the Certificate of Appealability ("COA") standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so a COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). Since there would not be at least one non-frivolous issue to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be denied. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this <u> 20th </u> day of January, 2011.

/s/ *[signature]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA

---

objection. *See supra* n. 7.